# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **REGINA K. BROWN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )      **Case No. CIV-14-555-SPS** |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

The claimant Regina K. Brown requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security

regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

**Claimant's Background**

The claimant was born August 26, 1962, and was fifty years old at the time of the administrative hearing (Tr. 125). She has a high school education, and has worked as a seamstress, production assembler, and residence care aid (Tr. 17, 138). The claimant alleges she has been unable to work since October 20, 2011, due to arthritis, myopathy, diabetes, carpal tunnel syndrome, neuropathy, spurs, bunions, hot flashes, mood changes, and high blood pressure (Tr. 138).

**Procedural History**

On November 14, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 123-130). Her applications were denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 9, 2013 (Tr. 10-19). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she needed the option to change positions from sitting to standing (and vice versa) every thirty minutes without leaving her workstation, could not perform overhead reaching with her right arm, and could only

occasionally handle and finger bilaterally (Tr. 14-15). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the regional and national economies, *e. g.*, furniture rental consultant, call out operator, and election clerk (Tr. 18).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly assess her credibility, and (ii) by failing to properly assess her RFC. Neither of these contentions have merit and the decision of the Commissioner should therefore be affirmed.

The ALJ found the claimant had the severe impairments of arthritis, diabetes, impingement syndrome of the right shoulder, fracture of scaphoid right wrist, neuropathy, triggering finger of the left middle finger, noncompliance with medical regime, and hypertension (Tr. 13). The relevant medical evidence reveals that claimant regularly consulted with family practice providers at Chickasaw Nation Medical Center between November 2010 and July 2013 for joint pain in her hands, right shoulder, right elbow, feet, and knees (Tr. 196-210, 214, 249, 272-392). The claimant's various assessments relevant to her disability claim included diabetes, arthritis, osteoarthritis, hypertension, hyperlipidemia, multiple arthralgias, right shoulder pain, medical noncompliance, rheumatoid arthritis, triggering left middle finger, right shoulder adhesive capsulitis, neuropathy, right shoulder tendonitis, unspecified arthropathy, and right hand/wrist pain and swelling (Tr. 197, 200-215, 250, 272-393). Her treatment consisted largely of medication management, although she did receive steroid injections on December 1,

2011, and on January 12, 2012, and two treatment notes reference physical therapy, although there are no physical therapy notes in the record (Tr. 217, 250, 305, 340).

On June 21, 2012, the claimant presented to Dr. Fabio Mota at the Chickasaw Nation Medical Center Rheumatoid Arthritis Clinic for pain she had been experiencing for six months to a year in her hands, right shoulder, right elbow, and feet (Tr. 353). Dr. Mota noted a mild extension deficit in her right shoulder, atrophy of her right forearm muscles, metacarpophalangeal joint inflammation on her right hand with tenderness to palpation, metacarpophalangeal tenderness on her left thumb with an inability to flex, and metatarsophalangeal tenderness bilaterally (Tr. 353). He also noted the claimant tested negative for both rheumatoid factor and anti-nuclear antibodies (ANA), but that imaging of her right hand showed metacarpophalangeal erosions (Tr. 353). Dr. Mota diagnosed the claimant with rheumatoid arthritis and prescribed an anti-inflammatory medication as well as a folate supplement (Tr. 353). The claimant reported improvement at follow up appointments with Dr. Mota in August 2012 and November 2012, but in March 2013 and June 2013, she was not feeling as well as she had been (Tr. 268, 288, 308, 338). On June 27, 2013, Dr. Mota noted swelling at the claimant's elbows, metacarpophalangeal and proximal phalangeal joints, but that her wrist was not affected, and that she had full range of motion in her knees and ankles (Tr. 268). He noted the claimant was experiencing an exacerbation, and administered an anti-inflammatory injection (Tr. 268-69).

On September 27, 2012, the claimant presented to Dr. John Charboneau, an orthopedist, for pain and stiffness in her right shoulder. On examination, he found the claimant had limited forward flexion and abduction, and "essentially no external rotation"

in her right shoulder (Tr. 326). He diagnosed the claimant with right shoulder adhesive capsulitis, noted she had failed conservative treatment, and recommended a right shoulder manipulation under anesthesia, which the claimant underwent on October 17, 2012 (Tr. 317, 326). Her range of motion was improved at a follow up appointment on October 29, 2012 (Tr. 311).

State agency physician Dr. J. Marks-Snelling completed an RFC assessment on December 22, 2011, and found the claimant could perform light work (Tr. 239-286). On February 27, 2012, state agency physician Dr. James Metcalf reviewed the record (including some newly submitted evidence) and affirmed Dr. Marks-Snelling's RFC (Tr. 256).

At the administrative hearing, the claimant testified that the main reason she is unable to work is because of arthritis in her feet, knees, elbows, hands, and shoulders (Tr. 29). She stated she could not fully close her right hand, could not pick up change with her right hand, but could manipulate larger items (Tr. 29, 37-38). She testified her day is spent mostly watching television (Tr. 32). As to specific limitations, the claimant testified she could stand for 10-20 minutes, could sit for 30 minutes to an hour before needing to stretch, could lift a gallon of milk with her right hand, could raise her right arm above her head with difficulty, could tie her shoes from a seated position, but could not squat or kneel (Tr. 31, 42-45). In her Function Report, the claimant described her daily activities as doing light work laundry, cleaning, watching television, and doing dishes, but that she did not do any outside chores (Tr. 145-46). She further stated in her

Function Report that she experiences pain in her knees, shoulders, and hands when she lifts, squats, stands, reaches, kneels or uses her hands (Tr. 149).

In his written opinion, the ALJ summarized the medical evidence, including the claimant's hearing testimony. At step four, he noted the claimant's diabetes, noncompliance with her diabetes regime, hypertension, neuropathy, arthritis, wrist fracture, triggering left middle finger, right shoulder impingement syndrome, as well as her complaints of joint pain, and stated she received a variety of treatment. The ALJ then found the claimant not fully credible. Although he gave the state agency physician opinions great weight, the ALJ added the additional limitations of requiring a sit/stand option, no overhead reaching with her right arm, and only occasional handling and fingering bilaterally to the claimant's RFC. The ALJ stated that he "considered the claimant's impairments and included them in the [RFC]," but did not otherwise explain why he added additional limitations.

The claimant's first contention is that the ALJ failed to perform a proper credibility determination. A credibility determination is entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias,* 933 F.2d at 801. But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

The ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not fully credible," that her subjective allegations were not supported by the medical record, that her alleged severity was disproportionate to what she reported to her providers, and that her noncompliance with medication deeply eroded her credibility (Tr. 15-17). In making these findings, the ALJ summarized the medical evidence he relied on, *i. e.*, a normal diabetic foot examination (except for thickened toenails), normal imaging of her shoulder, a negative rheumatoid arthritis test, normal imaging of her feet (except for a heel spur), imaging of her wrist showing a healed fracture and mild degenerative changes, her own report of good relief from pain medication, and her noncompliance with her diabetes regimen (Tr. 16). The claimant contends that the ALJ improperly refuted her credibility based on her negative ANA test, and explains that a negative ANA test is not conclusive evidence that an individual does not have rheumatoid arthritis. Although the ALJ's use of the claimant's negative rheumatoid arthritis testing is perhaps questionable, the ALJ nevertheless made it clear that he did not base his credibility determination solely on this basis. The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of the claimant's credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

The claimant's final contention is that the ALJ failed to perform a proper RFC determination at step 4 of the sequential evaluation process. Specifically, the claimant

argues that the ALJ failed to account for bilateral swelling in her hands, tenderness and reduced grip strength in her right hand, and obesity, and that he improperly relied on the state agency physician opinions. But, the court finds the ALJ provided a summarized discussion of all the relevant evidence in the record and his opinion clearly indicates that he adequately considered the medical evidence of record in reaching his conclusions regarding the claimant's RFC. Furthermore, the only suggested limitations in the medical record were those stated by the state reviewing physician opinions, which the ALJ adopted, *added more restrictive limitations* of his own, *and still concluded* that the claimant could perform light work. Additionally, the claimant did not raise obesity as a severe impairment in her application for benefits or at the administrative hearing, but more importantly, she does not point to any evidence in the medical record (or in her testimony for that matter) showing her obesity exacerbated her other impairments. *See Callicoatt v. Astrue,* 296 Fed. Appx. 700, 702 (10th Cir. 2008) ("Without some evidence that her obesity was relevant to her other alleged impairments during the relevant time frame, the ALJ was not required to consider the claimant's obesity.") Thus, the ALJ did not err in analyzing her obesity at step four. When all the evidence is taken into account, the conclusion that the claimant could perform a limited range of light work is thus supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.' "), *quoting Howard v.*

*Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The gist of the claimant's appeal is that the Court should re-weigh the evidence and determine her RFC differently from the Commissioner, which the Court simply cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency."). *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 4th day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**